UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FEDERAL NATIONAL MORTGAGE
ASSOCIATION,

       Plaintiff,

v.	       Case No. 09-14703
       Honorable Patrick J. Duggan

MAPLE CREEK GARDENS, LLC,

       Defendant.
_____/

## OPINION GRANTING PLAINTIFF'S MOTION FOR APPOINTMENT OF A RECEIVER AND FOR A PRELIMINARY INJUNCTION

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on January 25, 2010.

PRESENT:    THE HONORABLE PATRICK J. DUGGAN
                    U.S. DISTRICT COURT JUDGE

On December 2, 2009, Plaintiff Federal National Mortgage Association ("Fannie Mae") filed this diversity action against Defendant Maple Creek Gardens, LLC ("Maple Creek") pursuant to 28 U.S.C. § 1332(a). Fannie Mae asserts two counts against Maple Creek in its Complaint: (I) "Enforcement of Mortgage (Including Assignment of Lease and Rents) and for Appointment of Receiver" and (II) "Preliminary Injunction". Presently before the Court is Fannie Mae's "Motion for an Order to Show Cause, for Appointment of Receiver, and for a Preliminary Injunction," filed December 16, 2009. Maple Creek filed a response to the motion on January 6, 2010, and the Court held a motion hearing on January 21, 2010. For the reasons that follow, the Court grants Fannie

Mae's motion.

## Factual and Procedural Background

On February 16, 2007, Maple Creek executed a Promissory Note borrowing $1.6 million from Arbor Commercial Funding, LLC ("Arbor"). (Doc. 4 Ex. A.) The Promissory Note ("Note") is secured by a Mortgage on a multi-family residential real estate project in the City of Woodhaven, Michigan, known as Maple Creek Gardens ("Property"). (Doc. 1 Ex. B.)[1] The Mortgage includes an assignment of rents and leases under which Maple Creek *inter alia* assigned its interest in all rents and leases concerning the Property to Arbor. On February 16, 2007, Arbor assigned the Note and Mortgage to Fannie Mae. (Doc. 4 Ex. C.)

In April 2009, Maple Creek advised Arbor that it anticipated being unable to meet its next loan payment. (Doc. 9 Ex. A.) In fact, between July 1 and November 1, 2009, Maple Creek failed to pay the amount due on the Note. Fannie Mae sent a letter to Maple Creek via certified mail on September 17, 2009, noting the latter's default and demanding payment in full of the amount due on the Note– at the time, $1,557,317.00 exclusive of interest and certain additional amounts. (Doc. 4 Ex. D.) Fannie Mae further advised Maple Creek that, pursuant to the terms of the Mortgage, Maple Creek's license to collect rents had terminated as a result of the default and Fannie Mae now was entitled to all

---

[1]Fannie Mae indicates that the Mortgage is attached as Exhibit B to its motion, but only one page of the document has been provided. Fannie Mae, however, did attach a copy of the Mortgage to its Complaint. (Doc. 1 Ex. B.)

rents as they became due and payable. (*Id.*)

Fannie Mae informs the Court that it has started the process of foreclosure by advertisement of the Property due to Maple Creek's default, as permitted under the terms of the Mortgage. (*See* Doc. 1 Ex. B at § 43.) Maple Creek filed the instant lawsuit "in aid of the foreclosure" (Doc. 4 at 3) and pursuant to its rights under the Note and Mortgage. Specifically, Fannie Mae seeks (a) an order appointing a receiver of the Property and requiring persons in possession or control of the Property to deliver possession to the receiver; and (b) a preliminary injunction against Maple Creek and its agents and employees "barring them from transferring, expending, distributing, concealing, destroying, damaging or otherwise diminishing" the Property. (Compl. at 6.) Fannie Mae filed the pending motion asking the Court to appoint The Hayman Company as a receiver over the Property to *inter alia* collect all rent and manage the Property and to enter a preliminary injunction. (*See* Doc. 4 Ex. F (proposed order).)

## Applicable Law and Analysis

Fannie Mae contends that it is entitled to the relief sought pursuant to the plain language of the Mortgage. Alternatively, with respect to its request for the appointment of a receiver, Fannie Mae argues that it is entitled to relief under Michigan law, specifically Michigan Compiled Laws Section 600.2926. In response, Maple Creek argues that the Court lacks the authority to appoint a receiver under Michigan or federal law because such an appointment only can be made as an auxiliary remedy to some other primary requested relief. Contending that Fannie Mae only requests the appointment of a

receiver and a preliminary injunction in its Complaint, Maple Creek contends that it does not state a primary cause of action and therefore fails to state a claim on which relief may be granted.  Maple Creek further argues that  Fannie Mae's request for the appointment of a receiver and an injunction must be denied because Fannie Mae fails to demonstrate a threat of irreparable harm or injury if a receiver is not appointed or an injunction is not issued.

    As an initial matter, the majority of courts that have considered the issue have held that the *appointment* of a receiver in a diversity action in federal court is controlled by federal and not state law.  *See, e.g., Nat'l P'ship Inv. Corp. v. Nat'l Housing Dev. Corp.*, 153 F.3d 1289, 1291 (11th Cir. 1998) (citing cases).  It is well established that the appointment of a receiver pursuant to Federal Rule of Civil Procedure 66 is appropriate only as "a means to reach some legitimate end sought through the exercise of the power of a court of equity.  It is not an end in itself." *Gordon v. O'Brien*, 295 U.S. 30, 37, 55 S. Ct. 584, 588 (1935); *see also Kelleam v. Maryland Cas. Co. of Baltimore*, 312 U.S. 377, 61 S. Ct 595 (1941) ("This Court has frequently admonished that a federal court of equity should not appoint a receiver where the appointment is not a remedy auxiliary to some primary relief which is sought and which equity may appropriately grant.")  Fannie Mae, however, is not simply asking the Court to appoint a receiver and issue an injunction.  Rather, Fannie Mae has filed an action seeking to enforce a contract (i.e. the Note and Mortgage).

    The plain language of that contract provides for the appointment of a receiver upon

Maple Creek's default.  Specifically, Section 3(d) of the Mortgage states in relevant part:

> . . . if an Event of Default has occurred and is continuing, regardless of the adequacy of Lender's security, without regard to Borrower's solvency and without the necessity of giving prior notice (oral or written) to Borrower, Lender may apply to any court having jurisdiction for the appointment of a receiver for the Mortgaged Property to take any or all of the actions set forth in the preceding sentence [relating to Lender's right to "enter upon and take and maintain full control of the Mortgaged Property . . . including the execution, cancellation or modification of Leases, the collection of all Rents, the making of repairs" . . .].  If Lender elects to seek the appointment of a receiver for the Mortgaged Property at any time after an Event of Default has occurred and is continuing, Borrower, by its execution of this Instrument, expressly consents to the appointment of such receiver, including the appointment of a receiver *ex parte* if permitted by applicable law.  Lender or the receiver, as the case may be, shall be entitled to receive a reasonable fee for managing the Mortgaged Property.

(Doc. 1 Ex. B.)  Section 22 of the Mortgage sets forth the "Events of Default" and includes Maple Creek's failure to pay when due any amount required by the Note.  (*Id*. at § 22(a).)

This Court believes that Maple Creek's agreement in the Mortgage to the appointment of a receiver upon its default alone is sufficient to conclude that Fannie Mae is entitled to such an appointment at this time.  But even if the Court still must consider the factors relevant to deciding whether the appointment of a receiver is appropriate under Federal Rule of Civil Procedure 66, it concludes that the appointment is appropriate.  Courts contemplating the appointment of a receiver have considered a number of factors

but have found the adequacy of the security and the financial position of the mortgagor to be most important.  *See Resolution Trust Corp. v. Fountain Circle Assoc. Ltd. P'ship*, 799 F. Supp. 48, 50 (N.D. Ohio 1992); *see also New York Life Ins. Co. v. Watt West Inv. Corp.*, 755 F. Supp. 287, 292 (E.D. Cal. 1991) (citing *View Crest Garden Apts. v. United States*, 281 F.2d 844 (9th Cir. 1960)).  Courts also consider: (1) whether there has been fraudulent conduct on the defendant's part; (2) whether there is imminent danger of the property being lost, concealed, injured, diminished in value, or squandered; (3) inadequacy of legal remedies; (4) a probability that harm to the plaintiff by denial of appointment would outweigh injury to parties opposing appointment; (5) the plaintiff's probable success in the action and the possibility of irreparable injury to the plaintiff's interest in the property; and (6) whether plaintiff's interests sought to be protected will in fact be well-served by receivership.  *Watt West Inv. Corp.*, 755 F. Supp. at 292 (citation omitted); *Fountain Circle Assoc. Ltd. P'ship*, 799 F. Supp. at 50.

   In its response brief, Maple Creek states that it is facing financial problems as a result of "a very weak Michigan economy and recent layoffs" resulting in a substantial (25%) increase in vacancies for the Property. (Doc. 9 at 1) Additionally, in an April 23, 2009 letter written by Maple Creek's counsel to Arbor seeking a modification of the loan, Maple Creek offers that the "Property is hemorrhaging cash on a monthly basis" and that "the management company has not been paid its fees for some time and has indicated its unwillingness to continue without the payment of all accrued fees."  (*Id*. Ex. A.)  Counsel states that "vacancies are on the rise, monthly collections are down and the tenant quality

is deteriorating." (*Id.*) In light of Maple Creek's representations, the Court finds a danger in the Property not being maintained and diminishing in value and a risk that Maple Creek will divert rents that it is contractually obligated to use to repay the Note to pay its other financial obligations.[2] Maple Creek does not dispute that it executed the Note and Mortgage or that it subsequently failed to make several monthly mortgage payments. Thus Fannie Mae's likelihood of success on the merits is high. Finally, the Mortgage specifically provides for the appointment of a receiver upon Maple Creek's default. As one district court has stated, "[t]here is little hardship in enforcing the terms of the parties' bargain." *Watt West Inv. Corp.*, 755 F. Supp. at 293.

The above analysis also supports the issuance of Fannie Mae's requested preliminary injunction. (*See* Doc. 4 Ex. F ¶ 17.) Maple Creek has failed to comply with its obligations pursuant to the Note and Mortgage and Fannie Mae is entitled to foreclose on the Property. The requested injunction is necessary to protect Fannie Mae's interest in the Property in the interim and Maple Creek will not be harmed by enjoining it from transferring or encumbering the Property or taking actions that might diminish its value.

## Conclusion

Based on the above, the Court **GRANTS** Fannie Mae's motion for appointment of a receiver and for a preliminary injunction. An Order shall issue.

---

[2]As indicated earlier, by executing the Mortgage, Maple Creek assigned and transferred all rents received from the Property to Fannie Mae.

                    <u>s/PATRICK J. DUGGAN</u>
                    UNITED STATES DISTRICT JUDGE

Copies to:
Dennis J. Levasseur, Esq.
Jason R. Gourley, Esq.
Sheri B. Cataldo, Esq.
Kevin S. Toll, Esq.